# IN THE COURT OF APPEALS OF IOWA

No. 20-0308
Filed January 21, 2021

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**CHAD LAVERNE ENDERLE,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Scott County, Mary E. Howes, Judge.

Defendant appeals the district court decision denying his request for postconviction DNA testing. **AFFIRMED.**

Sharon D. Hallstoos, Dubuque, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Mullins, P.J., and May and Schumacher, JJ. Tabor, J., takes no part.

**SCHUMACHER, Judge.**

Chad Enderle appeals the district court's decision denying his request for postconviction DNA testing. The request for DNA testing was properly denied because the statutory requirements for such testing were not met. Also, Enderle has not shown he was denied his right to due process. We affirm the decision of the district court.

## I. Background Facts & Proceedings

Enderle was convicted of first-degree murder and willful injury. *See State v. Enderle*, 745 N.W.2d 438, 439 (Iowa 2007). In Enderle's direct appeal, the Iowa Supreme Court stated:

> The defendant's convictions arose out of the death of Gregory Harris, whose body was found in Davenport, Iowa, on March 10, 2003. Enderle became a person of interest to the police when they found his cell phone number stored in the victim's cell phone memory. When the police contacted that number, the person answering denied he was Enderle. Within minutes after the police called, Enderle had his cell phone number changed.

*Id.*

The court also stated:

> The State provided the following evidence linking Enderle to Harris's death. Enderle was present at Harris's house on the evening of March 5, 2003, the day before the State claims Harris died. In addition, Enderle admitted that he may have been present at Harris's house on the morning of March 6, 2003, and made a phone call from there to a drug dealer named "Bill." The most significant evidence was that Enderle's fingerprints were found at the scene of the crime. His fingerprints were found at the murder scene on a walking stick found at the victim's home and spotted with the victim's blood. Enderle's fingerprints were also found on a cigarette box that had been spattered with the victim's blood. Enderle bought new boots just days after the murder, he was nervous when he was speaking with the police on the telephone, he lied about his identity in the telephone conversation, lied about his acquaintance with the victim, and lied about the last time he was in Davenport. Enderle changed

his cell phone number just forty-five minutes after he spoke with the police. According to telephone records, Enderle did not attempt to call the victim after March 5, 2003, strongly suggesting Enderle did not expect the victim to be able to answer the telephone. The district court properly refused Enderle's motion for judgment of acquittal.

*Id.* at 443. Enderle's convictions were affirmed.[1] *Id.*

On January 19, 2018, Enderle filed a motion for DNA profiling after conviction, pursuant to Iowa Code section 81.10 (2018). He sought "touch-DNA"[2] testing of (1) the pack of cigarettes with his fingerprint, (2) the walking stick, (3) a sweater, and (4) a rock found inside the sweater. He claimed DNA testing would show someone else was present at the scene of the crime. Enderle's expert, Deanna Lankford, a forensic casework director at a DNA testing firm, testified it was feasible to conduct DNA testing on the items.

The State resisted Enderle's motion. It pointed out that testing of the cigarette pack, walking stick, and rock in 2003 showed the presence of blood matching the DNA of Harris. The State argued that even if someone else's DNA was located on the items, this would not be exculpatory for Enderle, whose fingerprints were on the cigarette package and walking stick. In an affidavit, Michael Halverson, a criminalist, stated that touch-DNA testing on the cigarette pack, sweater, and rock would not be feasible due to the use of chemicals at the time of the earlier testing. Halverson stated that testing on the non-bloody part of

---

[1] Enderle filed an application for postconviction relief (PCR), which was denied by the district court. The district court's decision was affirmed on appeal. *See Enderle v. State*, No. 12-1635, 2014 WL 956018, at *9 (Iowa Ct. App. Mar. 12, 2014). The PCR action did not raise the issue concerning DNA testing found in the present action.

[2] According to the State, "touch-DNA" refers to DNA from skin cells left on an item when a person touches the item.

the walking stick might be feasible, unless it had been exposed to chemicals used to develop fingerprints.

The district court denied the motion for DNA testing, finding "any testing would not change the outcome of the case." The court found there was ample evidence to convict Enderle based on the presence of his fingerprints on the pack of cigarettes and the walking stick, as well as the evidence concerning his inconsistent statements to officers. Enderle appeals the decision of the district court.

## II.     Standard of Review

Our review of the district court's ruling on this issue involving DNA testing is for the correction of errors at law. *See Mark v. State*, No. 09-0800, 2013 WL 5498146, at *2 (Iowa Ct. App. Oct. 2, 2013). To the extent a constitutional claim is raised, our review is de novo. *State v. Leedom*, 938 N.W.2d 177, 185 (Iowa 2020).

## III.     Discussion

**A.**     Enderle claims the district court erred by denying his motion for DNA testing. He states the sole evidence against him was a partial fingerprint inside a cigarette pack. He claims DNA testing would show his DNA was not at the murder scene. Also, he claims the fingerprint on the cigarette pack was not made in blood. Enderle contends that if DNA testing had been completed, there is a reasonable probability he would not be convicted because his DNA was not on the murder weapon or cigarette pack. He asserts DNA testing would show the DNA of someone else, who is the real culprit.

"A defendant who has been convicted of a felony or aggravated misdemeanor may make an application to the court for an order to require that DNA profiling be performed on a forensic sample collected in the case for which the person stands convicted." Iowa Code § 81.10(1). The application must state "[w]hy the requested DNA profiling results would have changed the outcome of the trial . . . ." *Id.* § 81.10(2)(*l*). The court must grant the motion if the statutory requirements are met. *Schmidt v. State*, 909 N.W.2d 778, 789 (Iowa 2018).

Iowa Code section 81.11(1) provides:

> The court shall grant an application for DNA profiling if all of the following apply:
> a. The forensic sample subject to DNA profiling is available and either DNA profiling has not been performed on the forensic sample or DNA profiling has been previously performed on the forensic sample and the defendant is requesting DNA profiling using a new method or technology that is substantially more probative than the DNA profiling previously performed.
> b. A sufficient chain of custody has been established for the forensic sample.
> c. The identity of the person who committed the crime for which the defendant was convicted was a significant issue in the crime for which the defendant was convicted.
> d. The forensic sample subject to DNA profiling is material to, and not merely cumulative or impeaching of, evidence included in the trial record or admitted to at a guilty plea proceeding.
> e. The DNA profiling results would raise a reasonable probability that the defendant would not have been convicted if such results had been introduced at trial.

The district court concluded the results of additional DNA testing would not change the outcome of Enderle's criminal trial. The court noted there was "ample evidence with the defendant's fingerprints on the cigarette packs and one of the murder weapons and other evidence to convict the defendant."

We find no error in the district court's conclusions. The most significant evidence against Enderle was that his fingerprints were found at the scene of the

crime. *Enderle*, 745 N.W.2d at 439. "[Enderle's] fingerprints were found at the murder scene on a walking stick found at the victim's home and spotted with the victim's blood. Enderle's fingerprints were also found on a cigarette box that had been spattered with the victim's blood." *Id.* Additional DNA testing would have done little to undermine this fingerprint evidence.

We find Enderle failed to show the "requested DNA profiling results would have changed the outcome of the trial." *See* Iowa Code § 81.10(2)(*l*). Also, he did not show there was a reasonable probability he would not have been convicted if the results of the requested DNA testing had been produced at his criminal trial. *See id.* § 81.11(1)(e). The request for DNA testing was properly denied because the statutory requirements for such testing were not met. *See State v. Hartsfield*, No. 09-0463, 2009 WL 3380650, at *1 (Iowa Ct. App. Oct. 21, 2009). The district court did not err in denying the motion. *See Mark*, 2013 WL 5498146, at *2 (affirming the denial of a request for DNA testing where there was no reasonable probability the testing would have changed the outcome of the case).

**B.**     Enderle claims the district court's decision denied his right to due process. He states that he has a constitutional right to prove his innocence. Enderle did not raise this due process issue before the district court. Also, the district court did not rule on the issue. We conclude the issue has not been preserved for our review. *See State v. Gordon*, 921 N.W.2d 19, 23 (Iowa 2018) (noting the normal rules of error preservation apply to due process claims).

Furthermore, even if the issue had been preserved, we have determined "[d]ue process requires no additional rights beyond what is already provided in section 81.10 and the various postconviction procedures found in Iowa law."

*Brodene v. State*, No. 11-0837, 2012 WL 5356036, at *5 (Iowa Ct. App. Oct. 31, 2012). Enderle has not shown his due process rights were violated by the court's decision denying his request for DNA testing.

We affirm the decision of the district court.

**AFFIRMED.**