# IN THE SUPREME COURT OF IOWA

No.21–0102

Submitted September 13, 2023—Filed January 26, 2024

STATE OF IOWA,

Appellee,

vs.

DEMETRIAS MARTIN,

Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, Tamra Roberts, Judge.

A defendant appeals the mandatory minimum term imposed with his sentence for first-degree robbery. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

McDermott, J., delivered the opinion of the court, in which all justices joined.

Martha J. Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Darrel Mullins, Assistant Attorney General, for appellee.

**McDermott, Justice.**

Demetrias Martin was convicted of first-degree robbery. At his sentencing hearing, the district court considered results from an assessment tool designed to estimate Martin's risk of reoffending. That tool, the Iowa Risk Assessment Revised, indicated that Martin scored as "high" risk for violent recidivism and "moderate/high" risk for continuous victimization, resulting in an assigned recommended level of correctional supervision of "intensive." Martin argues that the district court's reliance on these conclusions from the risk assessment, without any information about how the tool actually arrived at them, was an abuse of discretion.

I.

In March 2019, Martin was sentenced to twenty-five years in prison with a requirement to serve at least 70% of his sentence under a statutory mandatory minimum. Martin appealed, challenging this conviction and sentence on several grounds. The court of appeals affirmed his conviction. But because of a retroactive amendment to the robbery sentencing statute passed in June 2019, it determined that Martin was eligible for resentencing with a potential mandatory minimum as low as 50%. *See* 2019 Iowa Acts ch. 140, § 8 (codified at Iowa Code § 902.12(3) (2020)).

The amendment to the sentencing statute added factors for the district court to consider when determining the mandatory minimum to impose: "all pertinent information including the person's criminal record, a validated risk assessment, and the negative impact the offense has had on the victim or other persons." Iowa Code § 901.11(3) (2020). After the court remanded for resentencing, the State filed a motion requesting that the department of correctional services prepare an addendum to Martin's presentence investigation report to include a validated risk assessment since one had not been required when Martin

was originally sentenced. The district court granted the motion and ordered an addendum to include a "Validated Risk Assessment pursuant to Iowa Code Section 901.11(3)."

An updated presentence investigation report filed about three weeks later included the following paragraph under the heading "Addendum Update":

> On November 03, 2020, [t]he defendant was assessed utilizing the Iowa Risk Assessment Revised. The Iowa Risk Assessment Revised is a brief actuarial instrument used to estimate offenders' level of risks associated with them violently reoffending and their continuous victimization. The defendant is noted to have scored a High risk for violent recidivism, and a Moderate/High risk for continuous victimization, with an Intensive level of recommended correctional supervision.

At the sentencing hearing two months later, Martin's lawyer made several statements about this risk assessment information. He conceded that "the statute tells the Court that they can take it into consideration." But he argued against the district court's consideration of the risk assessment because he lacked information about how the assessment tool arrived at the proffered conclusions. He stated:

> I don't think that the way our Seventh Judicial District does the Risk Assessment really qualifies as providing my client with any due process. Just because it's statutorily authorized doesn't mean that it's, necessarily, the way it's being used, appropriate.
>
> . . . [W]hen we're talking about sentencing, . . . the defendant . . . has the right to be sentenced based upon accurate information and he has the right to challenge facts and circumstances that might impact his sentencing.
>
> You know, what we have here is just a conclusory statement, just that he's high risk. I don't have the ability to cross-examine anybody as to why that is, what criteria were used, or standard, or questions, . . . what answers were given, whether it was norm to local populations. I don't have any way to respond to that at all. It's just a conclusory statement, and I don't feel that it's fair for that to be considered.

> . . . And so I raise the objection to using that simply because I think to do my duty and to be an effective defense attorney I have to point out that I don't have any way to challenge that, and it appears to be a big part of what the Court might consider. . . . [I]t's unfair to use that to determine . . . the length of the sentence . . . because I don't know what -- what went into it.

Neither Martin nor the State presented any evidence at the sentencing hearing. Martin argued for the 50% mandatory minimum. The State again argued for the 70% mandatory minimum.

In explaining its sentencing decision, the district court noted that it had reviewed the presentence investigation report and the risk assessment addendum. The district court described how it would treat the risk assessment:

> I understand the factors that [Martin's lawyer] has pointed out. And the Court can only weigh the Validated Risk Assessment minimally because the Court doesn't have the factors on which that assessment has relied either to make [its] own determination of whether or not that's appropriate. However, I have taken it into consideration, as required by the code, but I don't think that I'm weighing it heavily by any means since I don't know what factors it relied on either, other than what's, I guess, in the instrument that they use.

The district court explained that "the bulk of the reason" for the sentence it would impose on Martin—twenty-five years with the same 70% mandatory minimum as before—centered on his crime's negative impact on the victim and the community.

Martin appealed the district court's sentence. We transferred the case to the court of appeals, which affirmed the sentence. We granted Martin's request for further review.

II.

Iowa Code § 901.11(3) specifies several factors that the district court must consider when sentencing a defendant for robbery:

> At the time of sentencing, the court shall determine when a person convicted of robbery in the first degree . . . shall first become eligible for parole . . . based upon all pertinent information including the

person's criminal record, a validated risk assessment, and the negative impact the offense has had on the victim or other persons.

Martin argues on appeal that despite a lack of evidence that the risk assessment had been "validated," the district court nonetheless considered it based on an erroneous belief that it *had to* consider it. "Although the district court was under the impression it was required to consider this conclusory statement," Martin writes, "it was not required to, especially absent evidence that the assessment was validated or without evidence of what the assessment specifically measured." The district court's failure to recognize that it had discretion *not* to consider the risk assessment in fashioning the sentence, according to Martin, requires us to reverse and remand so he can be resentenced.

This argument strays in part from the one Martin made at his sentencing. His objection at sentencing was that he had no way to challenge the risk assessment. Now, on appeal, Martin argues for the first time that the State failed to show that the presentence investigation report referenced a statutorily authorized—i.e., "validated"—risk assessment. Martin made no objection on that ground below. A district court may rely on information in a presentence investigation report when the defendant fails to object to the information in it. *State v. Gordon*, 921 N.W.2d 19, 24 (Iowa 2018). Without an objection and ruling in the district court on Martin's new validation argument, we're unable to address it on appeal. *See id.* at 23–24 (holding that alleged error through considering risk assessment information in a presentence investigation report requires an objection to be preserved for appeal). We leave for another day questions about the necessary showing to establish that a risk assessment has been validated under § 901.11(3).

We turn to the issue preserved for appeal: Whether the district court abused its discretion by considering the risk assessment information "without

evidence of what the assessment specifically measured." When the sentence challenged on appeal was within the statutory limits, we apply an abuse of discretion standard. *State v. Wilson*, 941 N.W.2d 579, 585 (Iowa 2020). Referring to risk assessments specifically, we have said that "if we need further evidence to determine if the sentencing factor is improper, the defendant must object to the factor *and* ask to make the appropriate record before sentencing." *State v. Headley*, 926 N.W.2d 545, 550 (Iowa 2019) (emphasis added). Martin's lawyer argued at his sentencing hearing that he lacked sufficient information about the risk assessment to challenge it, but he offered nothing further to support this contention. Martin needed to do more than object at the sentencing hearing for us to find that the district court's consideration of the risk assessment was an abuse of discretion. The district court does not abuse its discretion by considering risk assessment information in a presentence investigation report where a defendant has notice of the risk assessment and fails to present evidence exposing some actual unsoundness in it. *See id.*

As the State points out, Martin could have called the presentence investigation report's author to testify at the sentencing hearing about the risk assessment; he did not. The presentence investigation report was made available to Martin's lawyer about two months before his sentencing—well in advance of the statutory deadline. *See* Iowa Code § 901.4 (requiring that the defense attorney have access to the presentence investigation report at least three days before the date set for sentencing). The Code affords a defendant and defense counsel the opportunity to "file with the presentence investigation report . . . a denial or refutation of the allegations, or both, contained in the report," which then "shall be included in the report." *Id.* These provisions provide for the "orderly presentation of information to the court for sentencing purposes and the fundamental notion

of fairness." *State v. Ashley*, 462 N.W.2d 279, 281 (Iowa 1990). No denial or refutation of any part of the presentence investigation, including the risk assessment, appears in the report. The record similarly shows no request to postpone the sentencing hearing to enable further investigation into the matter before the hearing or to subpoena witnesses to testify at the hearing.

Nothing prevents defendants from attacking—or, should they choose, defending—a conclusion generated by a risk assessment tool in a presentence investigation report. But we've previously expressed the importance of *evidence* in evaluating these tools. *Gordon*, 921 N.W.2d at 24 ("[I]f risk assessment is a legitimate state exercise, it needs to be cabined by principles that demand that the methods used to implement it are legally germane, accurate, and fairly applied." (quoting Christopher Slobogin, *Principles of Risk Assessment: Sentencing and Policing*, 15 Ohio State J. Crim. L. 583, 596 (2018))). Despite receiving the presentence investigation report well in advance of the sentencing hearing, Martin presented no evidence to show that the district court abused its discretion by considering the information in it.

We thus affirm the district court's sentence and affirm the decision of the court of appeals.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**